■ MOSTAZAFAN FOUNDATION OF NEW YORK, Appellant, v RODEO PLAZA ASSOCIATES et al., Respondents.—Order of the Supreme Court, New York County (David H. Edwards, Jr., J.), entered July 15, 1988, which denied plaintiff The Mostazafan Foundation of New York's motion for a preliminary injunction

seeking to enjoin defendants tenants and subtenants from certain window display practices and from selling certain merchandise, is unanimously modified, on the law and facts and in the exercise of discretion, by granting plaintiff's motion solely to the extent of enjoining defendants from selling luggage, briefcases and sunglasses and from utilizing slot wall and "standard and bracket" construction, fluorescent lighting and price tags in their window displays, and otherwise affirmed, without costs or disbursements.

Plaintiff leased retail space in its Fifth Avenue building to defendant Rodeo Plaza Associates. Article 2 of the prime lease stated: "Tenant shall use and occupy demised premises for a high fashion department store furnishing high quality clothing, shoes, accessories, cosmetics, furs, jewelry and any other items and services of the caliber presently sold in stores such as Bloomingdales". Any subleases were made subject to and subordinate to the prime lease.

Defendant Rodeo sublet portions of the ground floor to defendant Tobias, who operates an electronics store called "Electronique", and to defendant Gem Profiles, Inc., a jewelry store also controlled by Tobias. To secure the requisite consent of plaintiff to the subletting, plaintiff, tenant and subtenants entered into separate consent agreements. The electronic store agreement provided, *inter alia:*

"F. Throughout the term of the Sublease, Subtenant shall use and occupy the Sublease Premises only in a manner which is at all times consistent with a first-class retail audio and photographic equipment store conducting its business operations to at least the caliber of a Bloomingdale's audio and photographic equipment department, offering for sale only high-quality articles of the type and caliber offered for sale at departments in stores such as Bloomingdale's; and

"G. Throughout the term of the Sublease, all window display and signs to be installed and maintained by Subtenant in and about the exterior portions of the Sublease Premises shall comply in all respects with Article 48 and all other applicable provisions of the Lease. Without limiting the generality of the foregoing, all window displays must be maintained and operated in a first-class manner, similar to standards set by Bloomingdale's."

The Gem Profiles, Inc. agreement had similar provisions.

Prior to the opening of the stores, plaintiff landlord complained of the proposed use of fluorescent lighting and slot wall construction, involving multitiered shelving against a flat

wall and standard and bracket construction, on the ground that it projected a high-volume, low-quality image incompatible with Bloomingdale's standards. Further, the landlord objected to an intent to sell items unrelated to electronics, such as luggage, handbags, briefcases and sunglasses. The landlord hired Mr. David Ogando, then the Bloomingdale's window display manager, who provided a three-page set of standards utilized by that store. This advised against fluorescent lighting, slot walls, tiered shelf units, prices on window items, etc. Nevertheless, when Electronique opened for business, its windows were cluttered with merchandise and utilized fluorescent lighting, slot wall and standard and bracket construction. It was also selling luggage, briefcases and designer sunglasses. When Gem Profiles opened the next day, its windows contained erotic oriental ivory figurines, which prompted complaints from office tenants of the plaintiff. While Gem Profiles withdrew the erotic figurines from its windows, the other changes sought by landlord were not made, and this action ensued.

The IAS court, *inter alia*, denied plaintiff's motion for a preliminary injunction, finding that the claimed departures from the "Bloomingdale's" window display standard were not conclusively shown and further, that the sale of luggage, briefcases and sunglasses was permissible under the Rodeo Plaza prime lease use clause.

The assumption by the IAS court that the subtenants could sell any type of merchandise of Bloomingdale's quality was based solely on the provisions of the prime lease quoted above. The court, however, ignored the provisions of the consent agreements, *supra,* to which the subtenants, landlord and tenant were all parties, which provided, as to Electronique, that the premises were to be used "only in a manner * * * consistent with a first class retail audio and photographic equipment store * * * offering for sale only high-quality articles of the type and caliber offered for sale at departments in stores such as Bloomingdale's". Thus, the sale of luggage, suitcases and other nonelectronic equipment was precluded.

As to the window display standards, while some of the practices objected to by landlord presented a close issue as to whether or not they would be present in a Bloomingdale's display, there is no genuine controversy that the cluttered appearance created by the slot wall and "standard and bracket" construction, the fluorescent lighting and price tags in the display windows are not within Bloomingdale's standards.

Thus, the IAS court's denial of a preliminary injunction limited to the prohibition of these display practices and the sale of luggage, briefcases and sunglasses was an improvident exercise of discretion. While defendants contend that any injunction would, of necessity, be too vague to enforce, this limited injunctive relief is definite and prohibits specific, key practices. Plaintiff has shown a clear right to this relief based upon its prime lease and the consent agreements. Irreparable injury would also result if the landlord lost office tenants in the present highly competitive Manhattan commercial real estate market, as a result of a lower image for this Fifth Avenue building. Finally, a balancing of the equities clearly favors the grant of such injunctive relief. As noted, plaintiff voiced its objections to defendants' practices before the opening of the stores, yet these parties proceeded undeterred. In addition, the plaintiff does not seek to terminate either the prime lease or the subleases, but only to ensure compliance with the noted restrictions. Concur—Sullivan, J. P., Asch, Milonas, Wallach and Rubin, JJ.